```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
NIKHILA SUNNY, et al.,                                      :
                                                            :
                              Plaintiffs,                   :
                                                            :   21-cv-4662 (BMC)
             - against -                                    :
                                                            :
JOSEPH R. BIDEN JR., et al.,                                :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
VAUGHN WASHINGTON GEORGE                                    :
WILSON, et al.,                                             :
                              Plaintiffs,                   :
                                                            :   21-cv-5379 (BMC)
             - against –                                    :
                                                            :
JOSEPH R. BIDEN JR., et al.,                                :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
NICOLAS ABREU SANTOS, et al.,                               :
                                                            :
                              Plaintiffs,                   :
                                                            :   21-cv-5240 (BMC)
             - against -                                    :
                                                            :
JOSEPH R. BIDEN JR., et al.,                                :
                                                            :
                              Defendants.                   :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

## MEMORANDUM DECISION AND ORDER

Before the Court is plaintiffs' consolidated motion for leave to file an amended complaint. Plaintiffs seek declaratory and injunctive relief – namely, an order (1) invalidating the Recalibration policy contained in State Department Cable 387 and (2) directing defendants to

adjudicate plaintiffs' visa applications in a reasonable time.[1]  Having considered the parties' submissions, the Court denies plaintiffs' motion to amend the complaint as futile.  Because all claims in the original complaints tethered to the Tiered Prioritization Scheme are moot and the remaining counts fail to state a claim, defendants' motions to dismiss are granted.

## BACKGROUND

Plaintiffs are lawful United States citizens and permanent residents who seek to sponsor their foreign national spouses, children, and siblings for immigrant visas (IVs).  Plaintiffs' original complaints challenged defendants' "Tiered Prioritization Scheme," which was a COVID-era policy mandating prioritization of Non-Immigrant Visas (NIVs) over Family Preference visas.  After the Tiered Prioritization Scheme was officially rescinded, defendants moved to dismiss plaintiffs' complaints as moot.

Plaintiffs subsequently moved for leave to file a consolidated amended complaint, this time challenging defendants' "Recalibration Policy," as expressed in State Department Cable 387, which plaintiffs claim is a de facto continuation of the rescinded Tiered Prioritization Scheme.  See 21 STATE 115378 (Nov. 16, 2021).  Cable 387 is entitled "Recalibration of Consular Services Prioritization at Posts Abroad" and is addressed to "all diplomatic and consular posts."  Plaintiffs' proposed amended complaint alleges that, pursuant to Cable 387, defendants are withholding IVs in favor of NIVs in violation of the Immigration and Nationality Act ("INA").[2]

---

[1] The three cases all assert the same claims and were consolidated on consent.  Plaintiffs in each action have filed a motion for leave to file a consolidated amended complaint.

[2] For a more fulsome recitation of the relevant INA provisions and background on the prior Tiered Prioritization Scheme, see Sunny v. Biden, 573 F. Supp. 3d 759, 764 (E.D.N.Y. 2021).  Plaintiffs' claim that the Tiered Prioritization Scheme is still de facto in effect is unsupported by their submissions.  An offhand statement in a

**DISCUSSION**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires." However, a court may deny leave if "there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000). Plaintiffs' proposed amended complaint alleges: (1) defendants' Recalibration Policy exceeds the authority of the executive branch; (2) defendants are withholding plaintiffs' visa applications in violation of the APA; (3) defendants' Recalibration Policy has unreasonably delayed adjudication of plaintiffs' visas; (4) defendants' Recalibration Policy is arbitrary and capricious; (5) defendants have violated the Accardi doctrine in failing to schedule plaintiffs' visa interviews according to department policy; and (6) defendants have violated the Accardi doctrine in failing to issue as many Family Preference visas as possible. Plaintiffs also seek a writ of mandamus.

Here, amendment would be futile as to the claims challenging the Recalibration Policy because plaintiffs lack standing to challenge that policy. The Court agrees with the analyses of various other courts finding that plaintiffs lack standing to challenge the Recalibration Policy because the visa processing delays are not fairly traceable to the Recalibration Policy; rather, they are fairly traceable to the COVID-19 pandemic and the prior Tiered Prioritization Scheme.

---

Facebook "Chat" held by the U.S. Embassy in Dhaka that the Embassy is still following the "tiered prioritization guidance" in no way suggests they are doing so at the "bequest of Defendant or the Visa Office in Washington." If the Embassy in Dhaka is still following the Tiered Prioritization Scheme, they are doing so in contravention of Department Policy. So too for the Embassy in Abu Dhabi. The Court fully expects that defendants have already clarified to these outposts that the Tiered Prioritization Scheme has been superseded.

See, e.g., Avagyan v. Blinken, No. 22-cv-2440, 2022 WL 19762411, at *4 (D.D.C. Sept. 29, 2022) (collecting cases).

Even if plaintiffs did have standing, Cable 387 does not constitute final agency action under the APA and is therefore not subject to judicial review.  To be "final," an agency action must (1) "mark the consummation of the agency's decisionmaking process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (cleaned up).

Plaintiffs argue that the first element is satisfied because Cable 387 rescinded the prior policy (the Tiered Prioritization Scheme) and created a new policy (the Recalibration Policy). Defendants respond that the Recalibration Policy is not "final" because it vests consular officers with the authority to make discretionary decisions based on "ever-shifting factors, needs, and priorities."  Plaintiffs reject this, noting that agencies cannot evade judicial review by directing officers to apply some ever-shifting set of factors and then claim that because those factors are not static, the policy can never be "final."

Turning to the second element, plaintiffs argue that Cable 387 creates binding obligations on consular officers because it rescinds prior policy and creates legal consequences by instructing consular officers to prioritize NIVs over IVs.  I disagree.

Contrary to plaintiffs' assertions, the language of Cable 387 is not binding.  Rather, it overwhelmingly consists of "qualification-laden, guideline-offering, advice-giving, recommendation-making, [and] discretion-preserving language that courts have held signifies a lack of finality." Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior, 397 F. Supp. 3d 430, 446 (S.D.N.Y. 2019).  For example, Cable 387 asks consulates to "please bear . . . in mind" certain considerations related to several categories of consular activities, noting that "posts

4

should strive to process immediate relative cases . . . and family preference cases" and "should also prioritize cases raised by the Visa Office." 21 STATE 115378 at § 6. Although the Cable states that "Special Consular Activities must remain a priority" and "[s]easonal priorities . . . must also be a factor," no specific instructions are imposed. Id. Plaintiffs claim that the Recalibration Policy mandates "the prioritization of NIVs over family preference applicants," but the Recalibration Policy does not "mandate" anything. Rather, the Recalibration Policy is riddled with discretion-giving language and does not require consular officers to prioritize NIVs over Family Preference applicants.

Several courts have analyzed whether Cable 387 constitutes final agency action under the APA and have unanimously found that it does not. See, e.g., United Afr. Org. v. Biden, 620 F. Supp. 3d 756, 773 (N.D. Ill. 2022) (Cable 387 does not constitute "final agency action" because "[t]he Recalibration Cable bears all the hallmarks of conferring discretion to consular officers rather than binding them."); Tesfaye v. Blinken, No. 22-cv-411, 2022 WL 4624210, at *9 (D.D.C. Sept. 29, 2022) ("courts have squarely rejected that the [Recalibration Policy] [is a] source of mandatory, non-discretionary duty to adjudicate . . . visa[s]."); Zakon v. Blinken, No. 22-cv-01524, 2022 WL 4474053, at *3 (D.D.C. Sept. 26, 2022) (Cable 387 is not "final agency action" because "[f]ar from cabining discretion . . . [Cable 387] *returns* discretion to consular officers to set service priorities."). The COVID-era mandatory Tiered Prioritization Scheme's rigid approach had relegated plaintiffs' visas to prioritization tier three of four (four being the tier of lowest priority). Cable 387 undid that, "rescind[ing] the mandatory prioritization guidance issues during the COVID-19 pandemic" and "*return*[*ing*] discretion to consular officers to set service priorities." Zakon, 2022 WL 4474053, at *3. Because Cable 387 neither confers rights

on visa applicants nor imposes obligations on the Department, it is not final agency action subject to judicial review.[3]

Counts Two and Three of plaintiffs' proposed amended complaint allege unlawful withholding of plaintiffs' visa applications and unreasonable delay in processing their applications.  See 5 U.S.C. §§ 555(b), 706(1).  The APA authorizes reviewing courts to compel unlawfully withheld or unreasonably delayed agency action.  5 U.S.C. § 706(1).[4]  Unlike claims challenging a specific policy, unreasonable delay claims often require review of "non-final agency action."  See Khamrabaeva v. Blinken, No. 22-cv-1219, 2022 WL 4446387, at *6 (D.D.C. Sept. 24, 2022).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  To determine whether a particular agency delay is unreasonable, courts look to the six factors from Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") See Nat. Res. Defense, 710 F.3d at 84 (citing TRAC, 750 F.2d at 79-80).

Because I view the fourth factor as dispositive, I decline to analyze the other five.  See Duan v. USCIS, No. 22-cv-01538, 2023 WL 4687078, at *4 (E.D.N.Y. July 22, 2023); see also Tetteh v. Blinken, No. 22-cv-02208, 2022 WL 4464999, at *2 (D.D.C. Sept. 26, 2022) ("TRAC

---

[3] Plaintiffs' claim that the Recalibration Policy is arbitrary and capricious under the APA (Count Four) fails for the same reason.  See Zakon, 2022 WL 4474053, at *3 ([B]ecause the "Recalibration Policy is [not] final agency action, it is not subject to [an] arbitrary-and-capricious challenge.").

[4] The proposed amended complaint and plaintiffs' briefing reveal that plaintiffs' withholding claim is redundant of their challenge to the Recalibration Policy and their unreasonable delay claim.  The Court thus refers to its discussion of those issues.

factor four is, for all intents and purposes, dispositive"). The fourth TRAC factor asks courts to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." TRAC, 750 F.2d at 80. "Even when all other TRAC factors lie in a plaintiff's favor, courts have refused to grant relief 'where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" Tetteh, 2022 WL 4464999, at *2 (quoting Mashpee, 336 F.3d at 1100); see also Duan, 2023 WL 4687078, at *4 (same); Yueliang Zhang v. Wolf, No. 19-cv-5370, 2020 WL 5878255, at *6 (E.D.N.Y. Sept. 30, 2020) (same); L.M. v. Johnson, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015) (same).

The expedition of plaintiffs' visa applications would delay the visa applications of other applicants in the same position as plaintiffs and thus negatively impact a "competing priority," i.e., other similarly-situated visa applicants. The relief sought is tantamount to "preferential treatment," which the Court declines to compel. See Zakon, 2022 WL 4474053, at *3 (declining to "bump Plaintiff to the head of the queue" because it amounts to "preferential treatment"). The APA's "unreasonable delay" mechanism is not an avenue by which those with the resources and know-how to file a federal lawsuit can thereby jump others in line. See Verma v. USCIS, No. 20-cv-3419, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) (cleaned up) ("To grant priority would push [others] further back in line when the only difference between them [and plaintiffs] is that plaintiffs brought a federal lawsuit.").

Counts Five and Six of plaintiffs' proposed amended complaint allege that defendants are violating the Accardi doctrine. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954). Under the Accardi doctrine, administrative agencies must adhere to their own policies. Following Accardi, the Supreme Court held in Morton v. Ruiz, 415 U.S. 199, 235 (1974), that "where the rights of individuals are affected, it is incumbent upon agencies to follow

their own procedures." However, this doctrine "generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law." United Afr. Org., 620 F. Supp. 3d at 774. Put differently, an agency's policy is "generally subject to Accardi if it limits the agency's discretion and imposes 'rights or obligations on the respective parties.'" Still v. Dep't of Labor, No. 17-cv-1420, 2021 WL 4502053, at *4 (D.D.C. Sept. 30, 2021) (quoting Padula v. Webster, 822 F.2d 97, 100 (D.C. Cir. 1987)).

As explained above, defendants' Recalibration Policy returns (rather than limits) discretion and neither confers rights nor imposes obligations on the parties. Indeed, various courts have already concluded that the Recalibration Policy is not vulnerable to an Accardi challenge. See United Afr. Org., 620 F. Supp. 3d at 774 ("[T]he Recalibration Cable [does not] have the force of law."); Avagyan, 2022 WL 19762411, at *6 (The Cable's statement that it "is the Department's policy to use as many of the 55,000 diversity visas available each fiscal year as possible . . . merely announces the agency's tentative intentions for the future. Plaintiffs cannot enforce such aspirations through Accardi."); Zakon, 2022 WL 4474053, at *2 (The Recalibration Policy "does not protect[] individual rights or impose[] binding norms on the agency" and thus does not "fall within Accardi's ambit.").

Finally, plaintiffs seek mandamus relief on the ground that defendants have a clear, non-discretionary duty to issue 226,000 Family Preference visas. To be sure, Congress has explicitly provided that "in no case shall the number" of annual Family-Sponsored Preference immigrants "be less than 226,000." 8 U.S.C. § 1151(c)(1)(B)(ii). Defendants respond that this language merely establishes the number of visas that must be made *available* each fiscal year, whatever that means. Plaintiffs have the better textual argument, but mandamus is a "drastic and

extraordinary" remedy "reserved for really extraordinary cases." Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380 (2004). The Court declines to go down that path where (1) defendants, faced with a substantial backlog, are issuing IVs in higher numbers than they were pre-COVID; (2) two-thirds of plaintiffs have been scheduled for an interview or had their application processed, and (3) the relief sought would simply displace other applicants who are also documentarily qualified and waiting for interviews.

## CONCLUSION

Because all seven counts asserted in plaintiffs' second amended complaint would fail on the merits, plaintiffs' motion for leave to amend their complaint is denied as futile. Plaintiffs' original complaints are moot insofar as they challenge the Tiered Prioritization Scheme, and they otherwise fail to state a claim for the reasons explained above. Thus, defendants' motions to dismiss the original complaints are granted. The Clerk is directed to enter judgment, dismissing these cases.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       August 29, 2023